THOMAS M. BURTON (035856)
5820 Stoneridge Mall Road, Suite 100
Pleasanton, California 94588
(925) 484-3233
(925) 847-2001

P.O. Box 427
West Jordan, Utah 84084
(801) 556-3711
(801) 562-9352

Attorney for Plaintiff Bowman



UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

CAROLYN BOWMAN,

      Plaintiff,

   v.

TEEN HELP, a partnership;
WORLDWIDE ASSOCIATION OF
SPECIALTY PROGRAMS, a
corporation; RESOURCE
REALIZATIONS, a corporation ;
R&B BILLING, a corporation; DIXIE
CONTRACT SERVICES, a
corporation; TEEN ESCORT
SERVICES, a corporation; KEN KAY;
ROBERT B. LICHFIELD; KARR
FARNSWORTH; BRENT M. FACER,

      Defendants.

_____/

No. 2:00 CV 84 C

**FIRST AMENDED COMPLAINT
FOR NEGLIGENCE; FALSE
IMPRISONMENT;  INTENTIONAL
INFLICTION OF EMOTIONAL
DISTRESS; BREACH OF
FIDUCIARY DUTY; FRAUD**

**DEMAND FOR JURY TRIAL**

First Amended Complaint

1



Comes now the plaintiff, Carolyn Bowman, and alleges as follows:

**PARTIES**

1. Clayton Bowman (Clayton) is the son of Carolyn Bowman and Roger Bowman.  Clayton was enrolled at Paradise Cove from June 1996 to June 1997 while he was a minor.  Plaintiff is a citizen of the State of Washington.

2. The Worldwide Association of Specialty Programs is a non-profit corporation organized under the laws of the State of Utah with its principal place of business in St. George, Utah, of which Karr Farnsworth is the Executive Director.  It is an umbrella organization controlling and regulating all Teen Help programs.  It is the alter ego of each and every other named entity defendant, being under the control of and responsible to a centralized governing group of the named individual defendants, among others.

3. Teen Help is a non-profit corporation organized under the laws of the State of Utah with its principal place of business in St. George, Utah.  It is the alter ego of each and every other named entity defendant, Robert B. Lichfield being its general partner, and answers to a centralized governing group of the named individual defendants.  It purports to help desperate parents of at-risk teenagers put them in appropriate treatment centers, but, in practice, only refers

them to its own stable of youth camps.  It is the defendants' marketing arm to recruit adolescent inmates for Cross Creek Manor, Paradise Cove, Tranquility Bay, Casa By The Sea, and other cult camps run by some of the other defendants.

4. Dixie Contract Services is a corporation organized under the laws of the State of Utah, with its principal place of business in St. George, Utah.  It is the alter ego of each and every other named defendant, being under the control of and responsible to a centralized governing group of the named individual defendants, among others.  It hires and directs so-called escort services to kidnap adolescent candidates from their homes, often in the middle of the night, and take them by force to Brightway Hospital for passport procurement before being transported abroad.

5. Teen Escort Services is a corporation organized under the laws of the State of Utah, with its principal place of business in St. George, Utah.  It is the alter ego of each and every other named defendant, being under the control of and responsible to a centralized governing group of the named individual defendants, among others.  It hires and directs so-called escort services to kidnap adolescent candidates from their homes, often in the middle of the night, and take them by force to Brightway Hospital for passport procurement before being transported abroad.

6. R & B Billing is a corporation organized under the laws of the State of Utah, with its principal place of business in St. George, Utah.  It is the alter ego of each and every other named defendant, being under the control of and

First Amended Complaint                                    3

responsible to a centralized governing group of the named individual defendants, among others. It bills and collects exorbitant fees charged by the various Teen Help cult centers by misrepresenting to insurance companies that the Teen Help programs are either therapeutic or educational depending on the coverage available.

7. Resource Realizations is a corporation organized under the laws of the State of Utah, with its principal place of business in St. George, Utah  It is the alter ego of each and every other named defendant, being under the control of and responsible to a centralized governing group of the named individual defendants, among others.  It plans and conducts the behavior modification seminars for inductees and their parents, which modify the values and impair the psychological health of both groups.

8. Robert B. Lichfield is an owner, partner, shareholder, or otherwise directs the conduct and activities of each and every named corporate or partnership defendant.  He is a citizen of the State of Utah.

9. Karr Farnsworth is an owner, partner, shareholder, or otherwise directs the conduct and activities of each and every named entity defendant.  He was, at all times material, the director of Cross Creek Manor.  He is a citizen of the State of Utah.

10. Brent M. Facer is an owner, partner, shareholder, or otherwise directs the conduct and activities of each and every named entity defendant.  He is a citizen of the State of Utah.

11. Ken Kay was, at all time material, the director of Brightway Hospital in

St. George, Utah.  He is currently the director of the World Wide Association of Specialty Programs.  He is a citizen of the State of Utah.

12. There exists, and at all times herein mentioned there existed, a unity of interest and ownership between defendants Lichfield, Farnsworth, Facer, and Kay, or some of them, on the one hand, and the entity defendants, whether corporate, partnership, or otherwise styled, on the other hand, such that any individuality and separateness between defendants Lichfield, Farnsworth, Facer, and Kay, on the one hand, and the entity defendants, on the other hand, had ceased, and the entity defendants were and are the alter egos of the defendants Lichfield, Farnsworth, Facer, and Kay such that one or more of the individual defendants coordinated, controlled, directed, and oversaw the activities of all of the entity defendants and operated and profited from them as sole proprietorships without the requisite independent oversight or accountability requisite of bona fide entity defendants.   Adherence to the fiction of the separate existence of the entity defendants and the named individual defendants would permit an abuse of the entity privilege and would sanction fraud and promote injustice by shielding the individual defendants from accountability to the plaintiff and responsibility for the acts and conduct of the entity defendants, which are purposeful facades without assets, and thus unable to respond in damages for wrongdoing or liability.

13. The defendants Does I through X, inclusive, are sued under fictitious names. Their true names are unknown to the plaintiff and will be added by amendment when ascertained.  They are, according to the plaintiff's information

and belief, jointly and severally liable for the acts and occurrences complained of.

14. Each defendant was, at all times material, the agent of each and all of the other defendants and all defendants conspired together or otherwise acted in concert in causing the acts and occurrences complained of.

## JURISDICTION

15. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1332(a)(1).  The matter in controversy exceeds the sum of Seventy Five Thousand Dollars, exclusive of interest and costs.

## VENUE

16. Venue is appropriate in this Court pursuant to the provisions of 28 U.S.C. § 1391(a) and (c).

## FACTS

17.  Clayton was experimenting with drugs, and was at loose ends.  He was doing poorly in school.   Carolyn and Roger hired the defendants to kidnap Clayton and induct him into one of the defendants' rehabilitation programs. Defendants bodily and forcibly removed Clayton against his will from Las Vegas, Nevada, where he thought that he was enjoying a four-day vacation, to Brightway Hospital in St. George, Utah.

18. Brightway purported to perform a psychological evaluation of

First Amended Complaint                                      6

Clayton for placement and customized treatment in the Teen Help program. While posing as a hospital, Brightway was, in reality, merely a holding cell in which to keep Paradise Cove inductees while their passports were processed on an involuntary and expedited basis.   At first, Clayton could hardly eat anything due to the shock of being kidnapped in broad daylight.  Finally, seeing that there was no way out, he began to eat out of sheer hunger.  When Clayton's passport was obtained after two weeks, Defendants forcibly transported him against his will out of the United States to the Island of Western Samoa.

19. Once at Paradise Cove, Defendants took Clayton to a jungle compound called Le Tiera, surrounded by an 8 foot fence topped by barbed wire.  From 30 yards away, Clayton could hear screaming, yelling and moaning from those confined in the isolation cells.  Bathroom privileges were restricted to five minutes every hour with six sheets of toilet paper.  The slightest infraction was severely punished.  Deprivation produced a veneration for food approaching worship.  Water was rationed to 10 gallons a day for sixteen young men living in humid 100 degree heat.

20. After working his way out of the compound to the beach site, Clayton began to rebel, and was sent back to Le Tiera dungeon where he was required to sit cross-legged for twelve hours except for two brief breaks.  Later, Clayton was put in isolation.  The Samoan guards struck him in the face with their fists wrapped in towels.  They taped his jaw shut with duct tape, hog-tied him with handcuffs and chains; they held his arms behind him and beat him about the face and stomach.  Later, in response to another infraction, Clayton

was put in isolation for a week without food or water, and taunted by the Samoans with water which he could not reach or drink.   Due to the abuse and deprivation, Clayton was reduced almost to a skeleton.   He was sexually attacked by some of the Samoan staff when he was in the shower.   After several beating episodes, Clayton was drugged by Dr. Goates, Defendants' roving psychiatrist, to quiet him down.

21. After his return, Clayton was so devastated, distraught, and destroyed, that he had to be  hospitalized at Western States Mental Hospital for treatment, and still has not recovered his stability, by reason of which he has had to withdraw from this case.

## FIRST CAUSE OF ACTION

### (Negligence)

22. Defendants owed Plaintiff a duty to screen Clayton in order to protect him from induction into a boorish and brutal program whose rigors might foreseeably injure him.  Defendants breached their duty by failing to screen Clayton out of their program and, to the contrary, by admitting him into a program which they knew, or should have known, would be detrimental to him.

23. Defendants owed Plaintiff a duty to consult some reputable psychiatrist to determine whether or not Clayton should be on medication, the kind and dosage, and to assure that any medication was not over prescribed.

24. Defendants owed Plaintiff a duty not to induct Clayton into their program unless and until they had Clayton's written informed consent.

First Amended Complaint                              8

25. Defendants owed Plaintiff a duty not to take Clayton out of the United States unless and until they had his written informed consent.

26. Defendants breached their duty by inducting Clayton into their demented program, by failing to engage quality professional help, and by punishing Clayton as an criminal instead addressing any specific need justifying his presence at Paradise Cove, by prescribing and over prescribing medication designed to impair his will instead of treat him for illness, by abducting him into the program and by illegally removing him from the United States against his will and without his written consent.

27. Defendants' conduct proximately caused Clayton and his mother grievous personal injury and emotional distress from and after his induction to date.

28. Defendants' conduct was malicious, wanton, and in reckless disregard of Clayton's health, safety and welfare, by reason of which Plaintiff is entitled to recover punitive damages against them.

WHEREFORE, Plaintiff prays for judgment as hereafter stated.

## SECOND CAUSE OF ACTION

### (False Imprisonment)

29. Plaintiff incorporates by this reference paragraphs 1 through 21 as if stated in full.

30. Defendants and their agents kidnapped Clayton from Clark County, Nevada against his will and without his consent.   They transported him across

First Amended Complaint                                        9

state borders to Utah against his will and without his consent.  In Utah, the

defendants and their agents procured a United States passport against his will

and without his consent.   Using the illegally procured passport, the defendants

and their agents transported Clayton against his will and without his consent

out of the United States to the remote Republic of Samoa in the middle of the

Pacific Island beyond the reach of civil liberty where he was confined for over a

year until he was released upon his majority.

31. Defendants or some of them confined Clayton in a filthy, shabby,

putrid, pestilential compound on limited food and water without contact with

the outside world.  In doing so, the defendants falsely and fraudulently abused

the process of the United States by reason of which they deprived Clayton of a

substantial liberty interest without due process of law.

32. Clayton learned upon arrival at Paradise Cove that his parents were

unaware of its purpose and program.  He sought at that time to communicate

with them and to leave the program, but defendants or their agents censored his

mail, restrained him from any contact with the outside world, and refused to

permit his return home.

33. Defendants' imprisonment of Clayton in violation of his rights to due

process of law caused him serious and permanent emotional distress, and

psychological injury.

34. Defendants' conduct was malicious, wanton and in reckless

disregard of Clayton's health, safety and welfare, by reason of which his mother,

as a bystander, is entitled to recover punitive damages.

First Amended Complaint

WHEREFORE, Clayton prays for judgment against Defendants as hereafter stated.

## THIRD CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

35. Plaintiffs incorporates by this reference paragraphs 1 through 21 as if stated in full.

36. Defendants deprived Clayton of nutritious and wholesome food, proper sanitation, educational opportunities, exposed him to denigrating immoral and filthy conditions, subjected him to imprisonment, attempted to break his will, inflicted unjust punishment, deprived him of legal rights, kept him in isolation, deprived him of the care, comfort, support, and sustenance of his father, all of which caused Clayton personal injury and mental and emotional distress.

37. Defendants' conduct was in reckless disregard of Plaintiff's health, safety and welfare, by reason of which Plaintiff is entitled to recover punitive damages.

WHEREFORE, Plaintiff prays for judgment against Defendants as hereafter stated.

## FOURTH CAUSE OF ACTION

### (Breach of Fiduciary Duty)

38. Plaintiff incorporates by this reference paragraphs 1 through 21 as if stated in full.

First Amended Complaint

11

39. By seeking, and illegally obtaining physical custody of Clayton from his mother, and thereafter, by placing him into a captive and abusive environment of their own making, Defendants undertook a fiduciary duty toward the plaintiff  to protect and promote Clayton's health, safety and welfare.

40. Defendants, in the manner described above, breached their fiduciary duty as a maternal surrogate, which proximately caused the plaintiff to sustain pain, suffering, bodily injury and mental and emotion distress.

41. Defendants' conduct was malicious, wanton and in reckless disregard of Plaintiff's trust and of Clayton's health, safety and welfare, by reason of which Plaintiff is entitled to recover punitive damages.

WHEREFORE, Plaintiff prays for judgment against Defendants as hereafter stated

## FIFTH CAUSE OF ACTION

### (Fraud and Deceit)

42. Plaintiff incorporates by this reference paragraphs 1 through 21 as if stated in full.

43. As part of a scheme and artifice to defraud, and as a means by which Defendants could obtain money from Carolyn Bowman, Defendants falsely advertised in their brochure and on the internet that their Paradise Cove program was an innovative and effective program for teens who are struggling in their home, school, or community.  The brochure pictures an island paradise

with tropical sunsets, verdant waterfalls, clean facilities, and happy youngsters
"in the heart of Polynesia". It says nothing about the brutal, sadistic, filthy,
brain washing environment in which Clayton would be confined.

44. None of the defendants' representations was true, but instead all of
the above stated representations were false, and were made to Clayton's parents
with the intent and for the sole purpose of causing them to pay Defendants
large amounts of money, even though the cost for the services was negligible
and the services themselves were detrimental.

45. The excessive amount charged by Defendants for the privilege of
confining, abusing, and warehousing Clayton was fraudulent in that it was both
far in excess of the actual costs incurred for the lack of any treatment provided,
and was fraudulent as well in advancing the ruse that Defendants were
providing a therapeutic, social, and educational experience approximating in
value the yearly tuition charged.

46. Defendants concealed from Carolyn that Clayton was receiving
nothing of value from the program, and was, at worst, being over medicated on
Prosac offset by unknown medications never consented to, bereft of the
clothing bought and supplied by his parents, denied wholesome food, exposed
to raw sewage, hog-tied and kept in isolation boxes for long periods of time; and
brutally mistreated by savages.

47. Defendants made the aforesaid false statements and concealment
knowing them to be untrue. This, they did for the purpose and with the intent
that Clayton's parents would give Defendants custody and control over

Clayton without his consent and would keep him in the defendants' confinement until Defendants were willing to release him.

48. Plaintiff reasonably and justifiably relied upon Defendants' concealment, propounded falsities, and misrepresentations of true facts in entrusting, at great sacrifice, her son to the defendants' custody.

49. Defendants' knowing and intentional failure to disclose material facts and their deliberate concealment and misrepresentations of material facts in order to induce  Clayton's placement with them in Utah and Samoa constitute acts of fraud and deceit.

50. Defendants' conduct was malicious, wanton and in reckless disregard of Carolyn's trust and of Clayton's health, safety and welfare, by reason of which Plaintiff is entitled to recover punitive damages.

WHEREFORE, Plaintiff pray for judgment as follows:

FIRST CAUSE OF ACTION FOR NEGLIGENCE:

 a. Special damages according to proof.

 b. General damages according to proof

 c.  Punitive damages according to proof

SECOND CAUSE OF ACTION FOR FALSE IMPRISONMENT:

 a. Special damages according to proof.

 b. General damages according to proof.

 c. Punitive damages according to proof.

THIRD CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS:

First Amended Complaint                              1 4

    a. Special damages according to proof.

    b. General damages according to proof.

    c. Punitive damages according to proof.

FOURTH CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY:

    a. Special damages according to proof.

    b. General damages according to proof.

    c. Punitive damages according to proof.

FIFTH CAUSE OF ACTION FOR FRAUD AND DECEIT

a. Special damages according to proof.

b. General damages according to proof.

c. Punitive damages according to proof.

Dated: April 25, 2001

                                  _____

                                  Thomas M. Burton

First Amended Complaint               15

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that a true and exact copy of the foregoing FIRST AMENDED

COMPLAINT was served upon the Defendants by placing the same in the United States Mail,

postage prepaid, on the _2nd_ day of May, 2001, to the following:

Fred R. Silvester
Dennis J. Conroy
Spencer Siebers
SILVESTER & CONROY, L.C.
230 South 500 East, Suite 590
Salt Lake City, Utah 84102